253 A.2d 237.

MANUEL M. MADEIRA *vs.* PAWTUCKET HOUSING AUTHORITY.

MAY 14, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This is an employee's original petition for compensation. The petition was heard by a trial commissioner who thereafter entered a decree in which he found "That the petitioner has failed to prove by a fair preponderance of the reasonable evidence, that he sustained any injury resulting in incapacity on August 12, 1967, arising from the peculiar characteristics of his employment with the respondent, connected therewith and referable thereto." From that decree the petitioner appealed, and on November 13, 1968, the full commission entered a decree affirming that of the trial commissioner. The case is now in this court on the petitioner's appeal from that decree.

The record discloses that petitioner was employed as a maintenance man at a large housing complex operated by the respondent employer in the city of Pawtucket. It further appears that at the place of employment the employer maintains lockers and showers for the use of the employees. The petitioner testified that he at no time had availed himself of the shower facilities and that he used his locker only when changing from his dress clothes to his work clothes in the morning and changing back again at the end of the day. It appears that his locker was located in close proximity to the shower stalls and that late on an afternoon in August, while changing from his work shoes to his dress shoes and standing in his stocking feet, he inadvertently stepped into a puddle of water on the floor. According to petitioner, it was not his custom to change his socks while at work but only his shoes, so that after stepping into the puddle of water, according to his usual practice he put his shoe on over the wet sock and went home.

According to his testimony, petitioner sometime thereafter noticed blisters developing on his right foot, and about a week later similar blisters appeared on his left foot. On August 12, 1967, he consulted with Dr. Robert J. Houle, a podiatrist, who treated him for a short period of time, and

on October 26, 1967, was referred to Dr. Vincent J. Ryan, a dermatologist. It appears from the record that Dr. Ryan diagnosed the condition of petitioner's feet as a fungus infection commonly known as athlete's foot. Thereafter he assumed treatment of petitioner's infection.

It is settled that in compensation cases the findings of the commission are, in the absence of fraud, conclusive upon this court if there is in the record any legally competent evidence from which those findings properly could be made. *McDonald* v. *John J. Orr & Son, Inc.,* 94 R. I. 428, 181 A.2d 241. The petitioner here, however, argues that the commission erred in making findings as to the lack of evidence of a causal relationship between the condition of his feet and the incident in which he stepped in the puddle. He contends that the testimony of Dr. Houle establishes such a causal relationship and that such testimony was not contradicted by that offered on behalf of respondent through Dr. Ryan's testimony.

It is clear from the record that Dr. Houle, testifying in behalf of petitioner, stated his opinion to be that the infection was caused by the incident in which petitioner alleged that he had stepped in the puddle of water. It is equally clear that the testimony of respondent's medical expert, Dr. Ryan, was to the contrary. He stated that because of the virulent condition of petitioner's skin at the time of his initial examination, he was of the opinion that the infection had been contracted under circumstances other than the incident to which petitioner refers. That the single commissioner accepted the conclusion of Dr. Ryan and that this finding was affirmed by the full commission is also clear.

The petitioner, as we understand him, is contending that the probative force of Dr. Ryan's testimony on direct examination that the infection resulted from a cause other than the immersion of his foot in the puddle of water was

negated by his contradictory testimony on cross-examination. He argues, therefore, that the only evidence in the record remaining as to causation is that of Dr. Houle, which, in the circumstances, would be uncontroverted and binding upon the issue of causation.

Doctor Ryan had stated unequivocally that because of the virulent condition of petitioner's skin when he first examined him, it was his opinion that the infection resulted from something other than petitioner's stepping in the puddle of water. During cross-examination of Dr. Ryan by petitioner's counsel, however, the witness was asked whether it is "* * * within the realm of reasonable probability that a sock can be infected from a wet spot in a locker room floor." The record discloses that Dr. Ryan had answered this question in the affirmative, and it is from this answer that petitioner argues that Dr. Ryan's opinion stated in direct testimony was destroyed by this contradictory answer and, therefore, left the record barren of legally competent evidence that the infection was not caused by the immersion of petitioner's foot.

In the first place, we are unable to agree with petitioner's contention that there is a direct conflict between Dr. Ryan's testimony on direct and on cross-examination. An examination of the record persuades us that the testimony of the doctor on cross-examination was of such a general character that it did not contradict the specific conclusions to which Dr. Ryan testified on direct examination. Doctor Ryan's conclusion as to a want of causation stated in direct examination rested on the extremely virulent condition of petitioner's foot observed by him at the time of his initial examination. His answer on cross-examination, however, was not so qualified and contained only a portion of the factual conditions alleged by petitioner to have surrounded his injury. It appears to us then that Dr. Ryan's opinion that such an infection was "within the

realm of reasonable probability" did not take into consideration the virulent condition of petitioner's foot in the instant case. In short, we are of the opinion that the testimony given by Dr. Ryan in answer to a hypothetical question on cross-examination was not inconsistent with his answer given on direct examination concerning the cause of the condition he observed on petitioner's feet.

However, if the expert testimony in question did contain a substantial contradiction which could or could not have affected the credibility of the expert witness, we would not thereby deny probative force to a witness's direct testimony in the face of the contradictory testimony. To do so would involve this court in the weighing of evidence. This, as we have said many times, is the function of the commission in an exercise of its fact-finding power, and we are without authority to weigh the evidence. *McDonald* v. *John J. Orr & Son, Inc., supra; Zuchowski* v. *United States Rubber Co.,* 102 R. I. 165, 229 A.2d 61.

Neither do inconsistencies in a witness's statement preclude a fact finder from accepting his testimony as credible. Since credibility is a purely factual issue, the trier of fact can pick and choose from the witness's entire testimony that portion which he finds worthy of belief or reject all of his testimony as incredible. *Russian* v. *Lipet,* 103 R. I. 461, 238 A.2d 369. Once the commission has made such a determination, its action will not be disturbed by this court. *Corey* v. *Hassenfeld Bros., Inc.,* 100 R. I. 483, 217 A.2d 82. We cannot agree then with the petitioner's contention that the commission erred in finding that the petitioner had failed to establish a causal relationship between the immersion of his foot in the puddle and the infection that subsequently developed.

The petitioner's appeal is denied and dismissed, and the decree appealed from is affirmed.

*William G. Gilroy,* for petitioner.

*Higgins & Slattery, William C. Dorgan,* for respondent.